GEORGE H. MINOR, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

MILEAGE BOOK ACT — CONSTITUTIONAL AS TO CORPORATION REORGANIZED AND INCORPORATED SUBSEQUENT TO ITS ENACTMENT. The Mileage Book Act (L. 1895, ch. 1027) is constitutional as to a railroad corporation thereafter reorganized and incorporated under the Stock Corporation Law (L. 1892, ch. 688) providing for the reorganization of corporations upon the sale of corporate property and franchises, although the corpora-

tion succeeded to the rights of the old company, one of which was the right to charge a specified fare, since under section 3 of that law it became a new corporation and acquired the rights of its predecessor "subject to all the provisions, duties and liabilities imposed by law on such corporations."

*Minor* v. *Erie R. R. Co.*, 73 App. Div. 621, affirmed.

(Argued June 12, 1902; decided June 27, 1902.)

APPEAL from a judgment entered June 5, 1902, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and directing judgment for plaintiff.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot, George F. Brownell* and *William L. Marcy* for appellant. The Mileage Book Acts of the State of New York are unconstitutional and void under both state and United States Constitutions. (*Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, 162 N. Y. 230; *Purdy* v. *E. R. R. Co.*, 162 N. Y. 42; *People ex rel.* v. *Cook*, 110 N. Y. 443; *Matter of N. Y. Institution*, 121 N. Y. 324; *Ellis* v. *Paige*, 1 Pick. 43; *Bartlett* v. *King*, 12 Mass. 537; *Butler* v. *Russell*, 3 Cliff. 251; *U. S.* v. *Tynen*, 11 Wall. 92; *U. S.* v. *Claflin*, 97 U. S. 546; *L. S. R. Co.* v. *Smith*, 173 U. S. 684.) The Mileage Book Acts are unconstitutional as to the Erie Railroad Company, because it is a common carrier engaged in interstate commerce. (*Wabash Ry. Co. Case*, 118 U. S. 557.) As the old corporations which were reorganized into the Erie Railroad Company had the right to collect such fares as they should fix by virtue of special acts of the legislature, it follows that the present Erie Railroad Company has succeeded to those rights, and, therefore, that the Railroad Law of this State did not repeal such statutes by implication. Consequently the Erie Railroad Company does not come within the provisions of the Mileage Book Acts. (*Parker Case*, 165 N. Y. 274.)

*Charles B. Wheeler* for respondent.    The acts in question are not in violation of the interstate commerce clause of the United States Constitution.    (*Purdy* v. *E. R. R. Co.*, 162 N. Y. 42.)    The acts in question are not in violation of article 14 of the United States Constitution, declaring that no person shall be deprived of life, liberty or property without due process of law.    (*People ex rel.* v. *Cook*, 110 N. Y. 443; *Metz* v. *B. C. & P. R. R. Co.*, 58 N. Y. 61; *B. & N. Bridge & S. Co.* v. *Ebbets*, 3 Edw. 372; *Purdy* v. *E. R. R. Co.*, 162 N. Y. 42; *C.*, etc., *T. Co.* v. *Sanford*, 164 U. S. 578; *N. & W. R. R. Co.* v. *Pendleton*, 156 U. S. 667; *P. G. Co.* v. *Argentine*, 52 Fed. Rep. 690.)

Parker, Ch. J.    In *Beardsley* v. *N. Y., L. E. & W. R. R. Co.* (162 N. Y. 230), in obedience to the decision of the Supreme Court of the United States in *Lake Shore & M. S. Ry. Co.* v. *Smith* (173 U. S. 684), we held that the Mileage Book Act (Chapter 1027 of the Laws of 1895, as amended by chapter 835 of the Laws of 1896), in so far as it purported to affect the rights of the defendants as receivers of a railroad corporation existing at the time of its enactment, offended against that part of the Constitution of the United States which forbids the taking of property without due process of law, and, hence, was inoperative; and we reversed the judgment and directed a dismissal of the complaint.

*Purdy* v. *Erie R. R. Co.*, reported in the same volume (162 N. Y. 42), was an action to recover a penalty under that act against the reorganized corporation.    *This* incorporation was effected November 14, 1895, while the Mileage Book Act went into effect June 15, 1895.    We decided in that case that the record did not advise us of the history of the Erie Railroad corporation other than that its certificate of incorporation shows it to have been duly organized and incorporated after the passage of the act of 1895, and, hence, as to it, the Mileage Book Act could not offend against that provision of the Constitution which was effectively invoked in the *Beardsley* case, and so we affirmed the judgment.

The judgment under review awards to plaintiff one penalty against the same corporation under the Mileage Book Act, and the record shows the antecedent history of the present corporation, from which it appears that a predecessor corporation — as to a portion of its property — was incorporated by chapter 224 of the Laws of 1832; that thereafter and in the year 1878 such proceedings were had as that a reorganized corporation known as the New York, Lake Erie and Western Railroad Company became vested with all the property, rights and franchises of the predecessor corporation, which on the 5th day of October, 1878, it mortgaged to the Farmers' Loan and Trust Co. as trustee for bondholders; that subsequently such mortgage was foreclosed and the property duly sold to the representatives of a majority of those interested as bondholders or stockholders of the property; that almost immediately thereafter and on the 14th day of November, 1895, the certificate of incorporation was duly filed and the property sold at the foreclosure sale was conveyed to it.

The question up for decision, therefore, is whether the new corporation holds unimpaired all the rights and privileges which belonged to its predecessor corporation, or whether, in receiving from the state the privileges and benefits of a new incorporation, the new company and the property acquired by it became subject to the existing general provisions of the statutes of the state affecting such corporations?

Prior to the transfer of the railroad property, rights and franchises to this defendant, the right either of the corporation or the receivers to charge the rate of fare authorized by the statute under which the original corporation came into existence, could not be impaired by statutes of the character of the mileage book acts, and if those interested as the holders of securities representing the property had continued the operation of the property under the old corporation, or by receivers thereof, or in any other way which did not require further aid from the state, the management would not have been obliged to obey the mileage book acts. But those interested in the property were not content to manage the property

without securing from the state a further privilege, to wit, formation of a new corporation to manage the property. This privilege the state stood ready to grant to all corporations needing it, upon certain conditions, imposed upon all alike.

The statute under which defendant was incorporated was section 3 of chapter 688 of the Laws of 1892, which provides, among other things, that the purchaser or purchasers of such corporate property and their associates may incorporate by filing a certificate stating certain matters. Subdivision 4 provides that " such corporation shall be vested with and be entitled to exercise and enjoy all the rights, privileges and franchises, which at the time of such sale belonged to or were vested in the corporation last owning the property sold, or its receiver, *and shall be subject to all the provisions, duties and liabilities imposed by law on such corporations.*"

When the defendant availed itself of the permission of this statute it became, I think, vested with all the " rights, privileges and franchises" of the old corporation, except in so far as the enjoyment of such privileges by railroad corporations may have been limited by general law enacted subsequently to the creation of defendant's predecessor corporation. The statute speaks in all instances as of the time of the creation of the new corporation, and the language employed would seem to indicate that it was the legislative intent, in order to keep the body of the law harmonious upon the subject of corporations, to provide that when those interested in the property of an old corporation desire the aid of a new charter they may receive it, but subject, nevertheless, to such duties and liabilities as the law of the time imposes on similar corporations.

It cannot be questioned but the legislature has the right as one of the conditions of authorizing incorporation and the conferring of the rights, privileges and franchises of an old corporation to require the new corporation to subject itself to the existing law affecting similar corporations, although the effect may be to curtail to some extent the rights and privileges enjoyed by the old corporation, and which otherwise would pass unimpaired to it.

In *People ex rel. Schurz* v. *Cook* (148 U. S. 397) the pur-chasers at a foreclosure sale of a railroad undertook to organize a corporation to receive and hold the purchased property, but shortly prior thereto an act had been passed providing for the imposition of a tax upon incorporation, which, in that case, amounted to $18,000. The secretary of state refusing to file the certificate of incorporation without the payment of that sum, application for a mandamus was made to the Special Term in this state to compel him to file it, which motion was denied. The decision was affirmed in the General Term (47 Hun, 467) and in the Court of Appeals (110 N. Y. 443).

It was said in the Court of Appeals, PECKHAM, J., writing : "We think it is also plain that, under the reorganization acts above mentioned, when the purchaser at the foreclosure sale undertook to reorganize under those acts, and for that pur-pose filed in the secretary's office a certificate, upon the filing of which they became a body politic and corporate, the corpo-ration thus formed is a new and an entirely different one from that whose property and franchises the purchasers may have bought under the foreclosure proceedings. It is true that the corporation about to be formed by the filing of the certificate has, by force of the statute, when formed, all the rights, fran-chises, powers, privileges and immunities which were possessed before such sale by the corporation whose property was sold ; but that does not make the corporation the same by any means. The right to be a corporation which the old corpora-tion had, was not mortgaged and was not sold, and did not pass to the purchasers ; and they only obtained such a right upon filing the certificate mentioned, and they then obtained it by direct grant from the state, and not in any degree by the sale and purchase of the franchises, etc., of the old corporation."

This language was quoted with approval by the Supreme Court of the United States when that case reached it, and it further said, " There is no provision of law under which they made their purchase requiring them to become incorporated ; but, desiring corporate capacity, they demanded the grant of a new charter under which to exercise the franchise so acquired,·

\* \* \* and the right therein conferred [referring to the statute under which the original charter was secured] upon purchasers of corporate properties and franchises sold under foreclosure of mortgages thereon, to reorganize and become a *new corporation,* is subject to the laws of the state existing or · in force at the time of such reorganization and the grant of a new charter of incorporation."

It is established, therefore, by authority that the purchasers of the property, rights, franchises, powers and privileges of the railroad in question did not acquire the right to continue the old corporation nor to have one precisely like it, and that the state can regulate the terms and provide the conditions upon which it shall grant a new charter. This the state has done by this statute, which permits such purchasers to apply for the grant of a new charter if they desire it and at the same time imposes certain conditions.

The only question, therefore, open for decision is, whether it is the purpose or the provision of the statute under consideration to require those asking for the assistance of the state by way of a new incorporation under which to operate old properties to become subject to those general laws which experience has shown to be for the best interests of the state.

Now, while there is opportunity for controversy about it, it would seem as if the statute was not only fairly capable of such a construction, but, further, that it ought in reason to be accorded to it.

If the legislature had intended that the new corporation should be subject only to the same duties and liabilities as were imposed on the old corporation, the section would have read "and shall be subject to all the provisions, duties and liabilities imposed by law on such *corporation.*" The legislature, however, did not employ that language, but said that it should be subject to the duties, etc., imposed by law upon "such *corporations,*" thereby indicating a purpose to subject it to all the general provisions of law governing railroad corporations. It cannot be urged that such use of the plural in the last line was inadvertent, for the section is very carefully

drawn and provides that " such corporation [the new corporation] shall be vested with  *  *  *  the rights, privileges and franchises  *  *  *  vested in the corporation last owning the property sold, or its receiver, and shall be subject to all the provisions  *  *  *  imposed by law on such corporations."

Giving to the language employed its natural and ordinary meaning, as we must, the conclusion necessarily follows that the legislature intended to impose upon each new corporation created for the purpose of taking over the property, rights and franchises of an old corporation, as a condition of its creation, that it should be subject to the general provisions of law applicable to other corporations of like character.

But if it were doubtful whether that construction or a different one should be adopted, the same conclusion would result from the application of the general rule, stated by Mr. Justice HARLAN in *Coosaw Mining Co.* v. *South Carolina* (144 U. S. 550, 561), namely, that when either of two constructions of a statute be possible " the interpretation must be adopted which is most favorable to the state."

The judgment should be affirmed, with costs.

CULLEN, J. (dissenting).   I agree with the chief judge that this appeal presents only the question of the proper construction of our statutory provisions which authorize the purchasers on a sale of the property and franchises of a domestic corporation to reorganize and become a corporation (§ 3, chap. 688, Laws of 1892).   This concession, however, is made only on the assumption that the following remark contained in the opinion of this court in *Parker* v. *Elmira, C. & N. R. R. Co.* (165 N. Y. 275), " While it is doubtless true that natural persons cannot exercise the franchises which the state has conferred upon railroad corporations, there is no reason why they cannot be the conduit for transmitting them to another corporation in the manner provided by law," does not state the existing state of legislation on the subject, and that individuals can, under the laws of this state, acquire, maintain and operate

a railroad, that they may purchase on the foreclosure of a mortgage, which is my own judgment. For, if this assumption is erroneous and does not truly state the position of the majority of the court on the question, then it seems to me plain that the application of the mileage book laws to this defendant would be unconstitutional. The Supreme Court of the United States held in *Lake Shore & M. S. Ry. Co.* v. *Smith* (173 U. S. 684) that a similar statute of the state of Michigan was not valid as an exercise of the police power of the state to establish maximum fares, but an invasion of the property rights of the company. To this decision we gave effect in *Beardsley* v. *N. Y., L. E. & W. R. R. Co.* (162 N. Y. 230). The present defendant is the successor in interest of the defendant in the case last cited. It acquired its railroad from the purchaser at a sale on the foreclosure of a mortgage of the property of the earlier corporation. The state authorized that corporation to mortgage its road and franchise, and it is clear that it could not, by subsequent legislation, deprive the bondholders or mortgagees of their security, or prevent them after the acquisition of the road on a foreclosure from exercising its franchises unimpaired. If, therefore, the state forbade the purchasers from operating and running the railroad without forming a corporation, it could not require as a condition of their incorporation that they should surrender part of the franchises which they had acquired under the mortgage. On the assumption, however, which I have stated, I admit that the state might say to the purchasers of any railroad : Hold and operate the railroad you have bought as tenants in common or as partners; that is your right, but if you wish to become incorporated, that is a privilege which we will accord to you only on condition that you give up a part of your franchise. The question then is, Is that the effect of our legislation?

The statute reads : " Such (the new) corporation shall be vested with and be entitled to exercise and enjoy all the rights, privileges and franchises which at the time of such sale belonged to, or were vested in the corporation last owning the

property sold, or its receivers, and shall be subject to all the provisions, duties and liabilities imposed by law on such corporations." It is doubtless true that, under these provisions a franchise, personal to the old corporation, such as an exemption from taxation, an exemption from the exercise of the police power to prescribe maximum fares and the like would not pass. But the right which the defendant must have surrendered in this case, if it is held subject to the Mileage Book Act, was not of that character, but was *pro tanto* a part of the franchise connected with the property itself. This distinction should be clearly apprehended. It lies at the foundation of a line of authorities in the Supreme Court of the United States. (*Shields* v. *Ohio*, 95 U. S. 319; *R. R. Co.* v. *Maine*, 96 U. S. 499; *R. R. Co.* v. *Georgia*, 98 U. S. 359; *Norfolk & West. R. R. Co.* v. *Pendleton*, 156 U. S. 667; *Yazoo & M. V. Ry. Co.* v. *Adams*, 180 U. S. 1.) Speaking of franchises or privileges of the first class, it is said in the *Yazoo Ry. Co.* case that "exemptions from taxation are not favored by law and will not be sustained unless such clearly appears to have been the intent of the legislature. Public policy in all the states has almost necessarily exempted from the scope of the taxing power large amounts of property used for religious, educational and municipal purposes, but this list ought not to be extended except for very substantial reasons, and while, as we have held in many cases, legislatures may in the interest of the public contract for the exemption of other property, such contracts should receive a strict interpretation and every reasonable doubt be resolved in favor of the taxing power. Indeed it is not too much to say that courts are astute to seize upon evidence tending to show either that such exemptions were not originally intended or that they have become inoperative by changes in the original constitution of the companies." But these considerations have no application to the case before us. While, as I have said, natural persons are not forbidden to hold and operate a railroad in this state, I think it has plainly been the public policy of the state to have them operated by corpora-

tions.   Nearly all the statutory regulations for the operation of railroads are in terms confined to corporations.   The same is the case with almost all imposed duties.   It is only a corporation that is required when its road is intersected by a new railroad to unite with the corporation owning the new railroad in forming the necessary intersections and connections, an obligation that we are enforcing by a decision made this day.   It is not necessary to dilate on this subject.   I think it may be safely said that nearly every statutory provision in this state ignores the possibility or, at least, the probability that a railroad will be run by natural persons except in the case of receivers of the company owning or leasing the road.   Therefore the state was equally interested with the purchasers in having such purchasers incorporate.   It is hardly probable that in such a situation the state intended to exact from the purchasers a partial surrender of their franchise as a condition for becoming a corporation and conforming to state policy. Nor does it seem to me that the statute requires such result. The Mileage Book Act, though a general act, is of but very limited application and confined to new railroads.   The intent of the statutory provision for consolidation was to subject the reorganized company to all duties and liabilities which the legislature might lawfully impose on corporations as a class, but not to require of it a loss of the property and franchises of the old corporation, all of which the statute says the new company shall be entitled to enjoy and possess.

The order granting a new trial should be reversed and the judgment of the Trial Term should be affirmed, with costs.

O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur with PARKER, Ch. J.; GRAY, J., concurs with CULLEN, J.

Judgment affirmed.