(95 App. Div. 253.)

O'REILLY v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. June 24, 1904.)

1. STREET RAILROADS—LEASE OF LINE—STATUTES.

Laws 1885, p. 525, c. 305, making it lawful for any street surface railroad company to contract with another such company for the use of their respective roads or any portion thereof, subject to certain provisions and restrictions, and Laws 1890, p. 1082, c. 565, and Laws 1892, p. 1382, c. 676, continuing the privileges of contracting and the obligations incurred thereby, are in pari materia, and for the purposes of construction must be read together.

2. SAME.

Under those statutes providing that street railroads entering into such contracts shall carry or permit any other party to such contract to carry, between any two points on the roads or portions thereof embraced in the contract, any passenger desiring to make one continuous trip between such points for one single fare not higher than the fare lawfully chargeable by either of the parties for an adult passenger, the Legislature intended, in consideration of the privilege of contracting, to require that the lines so brought together under the contracts should carry passengers for one single fare between any two points on the lines, "to the end that the public convenience may be promoted," as expressed therein.

3. SAME.

Street railroads accepting the provisions of statutes permitting them to enter into a contract for leasing lines of other companies, as authorized thereby, are bound to assume the duties and obligations imposed by the statutes as a consideration for the privilege.

4. SAME—TRANSFERS—REFUSAL—PENALTY.

In an action to recover the penalty provided by Laws 1892, p. 1406, c. 676, § 104, providing that any street surface railroad company operating the lines of another by lease or consolidation, permitted by the act, re-

fusing on demand to issue a transfer to any person paying one single fare, entitling the passenger to one continuous trip to any point or portion of any road embraced in the contract, shall be liable to a penalty of $50, to be recovered by the person aggrieved, it appeared that defendant was the operating company of several leased lines, under a contract entered into pursuant to the statute. Plaintiff was a passenger on one of such lines, and demanded a transfer to another of the leased lines, which was refused. *Held*, that defendant's liability for the penalty could not be defeated because plaintiff's initial trip was on one of defendant's leased lines, to be completed on another of such lines, instead of on the defendant's line, to be completed on one or the other of the lessor company's lines.

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Luke O'Reilly against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Charles A. Collin, for appellant.
Louis Ehrenberg, for respondent.

WOODWARD, J. The plaintiff, on the 8th day of December, 1903, was a passenger on a north-bound car on the Vanderbilt avenue line of the Nassau Electric Railroad Company, desirous of making a continuous trip between his starting point on that line and his point of destination on the Crosstown line of the Brooklyn City Railroad Company. This continuous trip involved a change of cars at the intersection of the Vanderbilt avenue line of the Nassau Company and the Crosstown line of the Brooklyn City Company. The plaintiff had paid his fare of five cents on the Vanderbilt avenue line, and demanded of the defendant, the Brooklyn Heights Railroad Company (which is operating both of the lines involved in the controversy, under independent leases made in 1893 and 1900, respectively), a transfer ticket entitling him to transportation over the Crosstown line to his point of destination, without additional fare. The defendant refused to give the plaintiff such a transfer ticket, and refused to carry him on the Crosstown line without the payment of an additional fare of five cents; whereupon he brought this action to recover the penalty of $50 for such refusal, under the provisions of section 104 of the railroad law (Laws 1892, p. 1406, c. 676). The Municipal Court rendered judgment for the plaintiff, with costs, and this appeal on the part of the defendant brings up the question whether, as a matter of law, the defendant, under the facts of this case, is liable for the penalty provided by the statute.

The Brooklyn City Railroad Company and the Nassau Electric Railroad Company were incorporated and operated their lines under charters which gave them no right to consolidate with other lines of railroad, except as provided by the Laws of 1884 and subsequent amendments. By the provisions of chapter 252, p. 314, of the Laws of 1884 (section 15), it was provided that "it shall be

lawful for any street surface railroad company or companies to lease, or to transfer its or their right, subject to all its or their obligations in respect thereof, to run upon or to use any portion of its or their railroad tracks to any other street surface railroad company authorized to run upon such route, upon such terms as may be agreed upon by a majority of the respective boards of directors thereof, subject to approval or rejection by a vote of a majority of the stock represented at meetings of the stockholders of each of such companies, called for that purpose," etc.; the section being limited in cities of over 300,000 population to lines which were not parallel to the leasing line. By the provisions of chapter 305, p. 525, of the Laws of 1885, it was made lawful for any street surface railroad company, or any corporation owning or operating a street surface railroad or railroad route, to contract with any other such company or corporation for the use of their respective roads or routes or any portion thereof, "subject to the provisions, restrictions and conditions hereinafter stated, and thereafter to use or to permit the use of the same in such manner as may be prescribed in such contract." In section 4 of this act it was provided that:

"Each and every company entering into any contract under the power conferred by this act shall carry or permit any other party to such contract to carry between any two points on the railroads or portions thereof embraced within such contract, any passenger desiring to make one continuous trip between such points for one single fare not higher than the fare lawfully chargeable by either of such companies for an adult passenger; and each and every such company shall, upon demand and without extra charge, give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or any portion of any railroad embraced within such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced within such contract to the extent of their inclusion therein substantially as a single railroad with a single rate of fare."

Then follows a provision for a penalty of $50 for a refusal to grant such transfer, and the act is limited to cities having over 800,000 population, repealing all acts or parts of acts inconsistent therewith, which probably had the effect of superseding, substantially, the provisions of section 15, c. 252, p. 314, of the Laws of 1884.

In 1890, chapter 252, p. 309, of the Laws of 1884, was repealed, and chapter 565, p. 1114, known as the "Railroad Law," was enacted. Section 103 of this law provided that:

"Any street surface railroad corporation or any corporation owning or operating any such railroad or railroad route, in any city having a population of eight hundred thousand or more, may contract with any other such corporation for the use of their respective roads or routes in such city," etc.

Section 104 provided for submitting this contract to the stockholders, etc., and section 105 provided that:

"Every such corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger; and every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad

embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare. For every refusal to comply with the requirements of this section the corporation so refusing shall forfeit fifty dollars to the aggrieved party."

It is clear, we think, that the language of section 105, c. 565, p. 1114, of the Laws of 1890, "Every such corporation entering into such contract," refers back to the provisions of section 103 of the same act, "Any street surface railroad corporation or any corporation owning or operating any such railroad or railroad route * * * may contract with any other such corporation for the use of their respective roads," etc. That is, in consideration of the privilege granted of contracting for the use of other lines, thus producing a practical consolidation of the same, the state required that the lines so brought together under these contracts should carry passengers for one single fare between any two points upon the lines, "to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare." There can be no mistaking the legislative intent here, and, under the well-established rule that a corporation accepting the beneficial provisions of a statute is bound to assume the duties and obligations (Brooklyn & R. B. R. Co. v. L. I. R. Co., 72 App. Div. 496, 503, 504, 76 N. Y. Supp. 777, and authorities there cited), there can be no doubt that under the provisions of chapter 565, p. 1082, of the Laws of 1890, street railroad corporations in the city of New York, contracting under the authority of this statute, were bound to carry passengers over the entire distance between any two points upon the lines embraced within the contract, and that the fair construction of this language contemplated both the lessee and the lessor lines.

By the provisions of chapter 676, p. 1382, of the Laws of 1892, the railroad law underwent a substantial revision, many of the sections being shifted, and under title 4, which relates particularly to street surface railroads, there is no provision for leasing or contracting between street surface railroad corporations; but section 78 of the act provides that:

"Any railroad corporation or any corporation owning or operating any railroad or railroad route within this state, may contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract."

Section 80 of the same act limits such railroad corporations, excepting street surface railroad corporations, in their power to contract for the use of parallel or competing lines, while section 103 of the same act permits "any street surface railroad corporation which is the lessee or lessor, or both, or which has the right to use the route or portion of the route of another such corporation," to abandon a portion of its lines whenever certain provisions of the statute shall be complied with. It seems entirely clear, in view of this evolution of the railroad law, that when section 104, c. 676, p. 1406, of the Laws of 1892 speaks of "every such corporation enter-

ing into such contract," it refers to the contract authorized by section 78 of that chapter, under the authority of which the Brooklyn City Railroad was leased to the Brooklyn Heights Railroad Company in 1893, and the Nassau Electric Railroad was leased to the same operating company (this defendant) in the year 1900.

If we are correct in this view, there is no uncertainty in the language of section 104 of the railroad law as it now stands, the rule requiring us to give to it its natural and ordinary meaning. Minor v. Erie R. Co., 171 N. Y. 566, 573, 64 N. E. 454. The language of chapter 305, p. 525, of the Laws of 1885, which does not appear to have been specially repealed, and which undoubtedly only applied to the then city of New York, is most significant. It provides for making contracts between street surface railroad companies, and that "each and every company entering into any contract under the power conferred by this act shall carry," etc., and "each and every such company shall, upon demand and without extra charge, give to each passenger paying one single fare a transfer," etc. The revisions of 1890 and of 1892, continuing these privileges of contracting between street surface railroad corporations, continue the obligation to issue transfers. It was not until the enactment of chapter 676, p. 1382, of the Laws of 1892, that there was any authority for the Brooklyn Heights Railroad Company to contract with the Brooklyn City Railroad Company or the Nassau Electric Railroad Company, unless chapter 305, p. 525, of the Laws of 1885 was in force when the city of Brooklyn was consolidated with the city of New York. In either event the language of the law, and its spirit, required, as a condition of exercising the power to contract with other companies, that the lessee corporation should issue transfers so that passengers should be carried from one point to another upon the main or leased lines for one single fare. The act of 1885 and the subsequent acts of 1890 and 1892 are in pari materia, and for the purposes of construction must be read together. Blake v. Wheeler, 18 Hun, 496, 499, and authorities there cited. With this view of the case, it cannot be doubted that the Legislature intended to extend the privileges of street surface railroad corporations, and to impose as a condition that the corporations entering into the contracts thus permitted should consult the public convenience by permitting their passengers to travel over any portion of all of the involved lines necessary to reach their destination for one single fare, as though there was but a single road. The Brooklyn Heights Railroad Company has availed itself of this privilege. The Brooklyn City Railroad Company and the Nassau Electric Railroad Company, which could not have acted prior to the enactment of chapter 676, p. 1382, of the Laws of 1892, have likewise availed themselves of this privilege. As the privilege was granted only in connection with the obligation to furnish transfers over all of the lines embraced in the contract, as the Brooklyn City Railroad Company was under contract, and in effect a part of the Brooklyn Heights Railroad Company's system, at the time that the Nassau Electric Railroad Company entered into its contract with the Brooklyn Heights Company, it is difficult to understand

why the latter should be relieved from responsibility in the present case. As the operating company the Brooklyn Heights Company had received the benefits of the privilege conferred by the statute. No good reason is suggested why it should not have discharged the obligations imposed by the statute as a condition of that privilege. The language of the statute as it now appears is that "every such corporation entering into such contract shall carry," etc. It is the entering into the contract which carries with it the obligation to transfer, and the mere fact that the Brooklyn City Railroad Company and the Nassau Electric Railroad Company were not leased to the defendant under the same lease is of no importance. It is the intent of the Legislature which is the law, and it cannot be doubted that the intent of this statute was that, if the Brooklyn Heights Railroad Company contracted with the Brooklyn City Railroad Company for the use of its lines, the operating company became liable to carry passengers over both lines the same as though it was a single line of railroad. When this same company, controlling the Brooklyn City lines, likewise leased the Nassau Electric lines, it assumed the obligation of transferring passengers so that they might make a continuous trip between any two points upon the lines under the control of the Brooklyn Heights Company, for the purpose of permitting these contracts was "to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single fare." Clearly, the Brooklyn City lines, as a part of the Brooklyn Heights system, were embraced in the contract with the Nassau Electric Company, within the meaning of this statute granting an important privilege to the leasing corporation. "By an equitable construction," says Matthew Bacon (Bacon's Abridgment, statutes 1, 5) "a case not within the letter of the statute is sometimes holden to be within the meaning, because it is within the mischief for which a remedy is provided. The reason for such construction is that the lawmakers could not set down every case in express terms. In order to form a right judgment whether a case be within the equity of a statute, it is a good way to suppose the lawmaker present, and that you have asked him this question: Did you intend to comprehend this case? Then you must give yourself such answer as you imagine he, being an upright and reasonable man, would have given. If this be that he did mean to comprehend it, you may safely hold the case to be within the equity of the statute; for, while you do no more than he would have done, you do not act contrary to the statute, but in conformity thereto." See Riggs v. Palmer, 115 N. Y. 506, 510, 511, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819.

Is there any reason for exempting the Brooklyn Heights Railroad Company, which has had all of the benefits of the privilege conferred of contracting with other companies, from the obligations accompanying that privilege? Is there any reason to believe that the lawmakers, who gave the right to consolidate these lines under contracts which virtually absorb the lessor companies, intended anything less than that every company which undertook the opera-

tion of these various lines under one management should furnish transfers over all of the lines in its control, where such transfers were necessary to a continuous trip? It was the burden which was intended to go with the privilege, and this purpose ought not to be defeated because the plaintiff's initial trip was upon the Nassau Electric line, to be completed upon the Brooklyn City line, instead of upon the Brooklyn Heights line, to be completed upon one or the other of the lessor roads. This would permit the defendant to enjoy the advantages of the statute without the reciprocal advantage to the public which was contemplated by the transfer provisions of the law; and under the rule which requires us, of two constructions, to adopt that which is most favorable to the public or the state (Minor v. Erie R. Co., 171 N. Y. 566, 573, 64 N. E. 454, and authority there cited), we see no escape from the conclusion that the plaintiff has established his cause of action under the provisions of section 104 of the railroad law.

The judgment appealed from should be affirmed, with costs. All concur, BARTLETT and JENKS, JJ., in result.