WILLIAM J. BRAFFETT, Appellant, *v.* THE BROOKLYN, QUEENS COUNTY AND SUBURBAN RAILROAD COMPANY, Respondent.

Street surface railroads — construction and application of statute (L. 1892, ch. 676, §§ 101 and 104) prescribing fares to be charged by street railroad corporations formed by the consolidation of two or more companies — provision for five-cent fare applies only to railroads within the limits of any one incorporated city or village — New York (city of) — when merger of cities and towns in Greater New York did not change obligations and requirements of street railroads therein.

1. Upon examination of the history of legislation on the subject, *held*, that sections 101 and 104 of the Railroad Law (L. 1892, ch. 676) were not intended to interfere with the fares which existing street railroad companies were entitled to charge, but required as a condition for the exercise of the privilege of expansion in any direction that they should subject not only their newly-acquired property but their existing property to the provisions of the statute relative to single fares and transfers. A merger or consolidation does not exempt from conditions imposed in the case of leases or traffic agreements, and the courts should not import such an exemption into the statute unless the phraseology of the statute either excludes it or fails to include it.

2. Section 104 also provides that "the provisions of this section shall only apply to railroads wholly within the limits of any one incorporated city or village." In 1894, at the time of the consolidation of what is now defendant's road, one of the roads so merged was wholly within the city of Brooklyn, the other partially in that city but mostly in the town of Jamaica; hence such consolidation did not impose on the new corporation at that time the obligation to transport over the combined line for a single fare. *Held*, that the merger of that city and town thereafter in one municipality did not impose upon the railroad company obligations and requirements from which it was free before such consolidation.

*Braffett* v. *Brooklyn, Q. C. & S. R. R. Co.*, 137 App. Div. 899, affirmed.

(Argued January 19, 1912; decided February 13, 1912.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial

department, entered March 31, 1910, reversing a judgment in favor of plaintiff entered upon a decision of the Municipal Court of the city of New York on trial without a jury and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ralph G. Barclay* and *Robert Stewart* for appellant. Under section 101 of the Railroad Law (then in force) the defendant was bound to carry the plaintiff for one fare of five cents for the ride taken by the plaintiff, and having charged ten cents for the said ride, is liable under the old section 39 (now section 59) for such overcharge. (*Bull* v. *N. Y. C. Ry. Co.*, 192 N. Y. 371.) The plaintiff was also entitled to recover the penalty under section 104 of the Railway Law, then in force. (*Matter of Clarkson*, 43 N. Y. S. R. 651; 133 N. Y. 690.)

*Charles A. Collin, William M. Parke* and *George D. Yeomans* for respondent. Section 101 of the Railroad Law was not applicable to the defendant, in its operation of either the Broadway line or the Jamaica Avenue line, on May 3, 1898, for the reason that both of said lines of railroad were constructed before May 6, 1884, and were then in operation. (*Barnett* v. *B. H. R. R. Co.*, 53 App. Div. 437; *Bull* v. *N. Y. C. Ry. Co.*, 192 N. Y. 361.) Section 104 of the Railroad Law was not applicable to the defendant, in its operation of the Broadway line and the Jamaica Avenue line, on May 3, 1898, for the reason that the defendant was then operating the said railroads solely in its own right as the absolute owner thereof, and not by virtue of any contract with any other corporation. (*People* v. *B. H. R. R. Co.*, 187 N. Y. 48; *King* v. *N. E. R. R. Co.*, 123 App. Div. 130.) The rates of fare lawfully chargeable on the Jamaica Avenue line were not changed by the inclusion of that railroad within the city of New York by the Greater New York charter, taking

effect January 1, 1898.   (*Enton* v. *C. I. & B. R. R. Co.,*
136 App. Div. 800.)

CULLEN, Ch. J.   The action was brought to recover a
penalty for violation of sections 101 and 104 of the Rail-
road Law.   The facts in the case are not in dispute, as
they were established on the trial either by uncontro-
verted evidence or by the stipulation of the parties.
These facts, so far as is necessary to present the question
in issue, are as follows: The Broadway Railroad Com-
pany was incorporated in 1858 and constructed and
operated a street surface railroad in the city of Brook-
lyn from the ferry to Fulton avenue.   The Jamaica,
Woodhaven and Brooklyn Railroad Company had con-
structed a surface railroad along the road of the Jamaica
and Brooklyn Plank Road Company from the village
of Jamaica in the county of Queens to a point in the
city of Brooklyn near Fulton avenue and near the
city line of said city, practically the terminus of the
Broadway road.   The Jamaica company was in 1879,
under the authority of chapter 156 of the laws of that
year, consolidated with the Jamaica and Brooklyn Plank
Road Company.   In 1893 the defendant was incorporated
as a street surface railroad corporation.   On January
12, 1894, the defendant leased the railroads of the
two companies mentioned which taken together formed
a continuous line of railroad from the ferry at the
foot of Broadway, Brooklyn, to the village of Jamaica.
On the 16th day of January, 1894, the defendant,
having acquired the whole capital stock of each of
the two corporations whose roads it had leased, filed a
certificate to that effect in the secretary of state's
office, and thereupon, under the provisions of section 79
of the General Railroad Law of 1890 (Ch. 565), the two
lessor companies became merged into the lessee.   In May,
1909, the plaintiff with his wife boarded a Broadway car
on the street of that name in Brooklyn, bound easterly

towards Jamaica.  The plaintiff paid ten cents, the fare
for his wife and himself.  He desired to go to Wood-
haven and Jamaica avenues, a point in the old town of
Jamaica in the county of Queens, and asked for a trans-
fer to that place.  This was refused.  He was told he
could get a transfer at Alabama avenue and Jamaica
avenue, a point still within the old city of Brooklyn and
county of Kings.  He got such a transfer and took another
car bound east.   When he had gone in that car as far as
the dividing line between the counties of Kings and
Queens there was exacted from him an additional fare
for himself and his wife.  He contends that by the two
sections mentioned the defendant was precluded from
charging the additional fare.  He brings this action to
recover the penalty for its exaction.  He recovered a
judgment in the Municipal Court of the city of New
York.  The Appellate Division reversed the judgment
and ordered a new trial, and it has allowed an appeal
from such order to this court.

It appears by the record that the learned court below
placed its decision on the authority of its decision in *King* v.
*Nassau Electric Railroad Company* (128 App. Div. 130),
which in turn was partly based on the decision of the
same court in *O'Connor* v. *Brooklyn Heights Railroad
Company* (123 App. Div. 784).   In the earlier case it was
held that section 101 applied only to the case of a through
car, if there were any such, and that the company was
not obliged to give a transfer from one car to another car
which moved over the remainder of its route.   That
proposition was overruled by the decision of this court in
*Bull* v. *New York City Railway Company* (192 N. Y.
361).  The section, however, is not applicable to the
defendant, for all the defendant's railroad was con-
structed and in operation several years prior to May 6th,
1884, and there is nothing in the case to show that it has
ever acquired the right to extend its road or to construct
branches under the provisions of either the General Rail-

road Act or its predecessors, the Surface Street Railroad
Acts of 1884 (Ch. 252) and 1885 (Ch. 303).

The plaintiff's right to recovery must, therefore, rest on
section 104. In the later case, *King* v. *Nassau Electric
R. R. Co.*, the Appellate Division held that the section did
not apply because the defendant in that case was the
owner, not the lessor, of the two roads from one to the
other of which the plaintiff sought a transfer. From the
citation by the court below of that decision as an author-
ity for the disposition of this case we understand that
court to have held that because the defendant, after the
lease of the two roads, acquired the stock of the compa-
nies owning those roads and thereupon the constituent
companies became merged in the lessee, the requirements
of section 104 were no longer imperative, though they
would have been had the defendant continued to oper-
ate the two roads under the leases. We do not assent
to this proposition. If the Railroad Law in the form
extant at the time this cause of action arose were a
new and original statute the natural construction would
be to refer the commencement of section 104, "every
such corporation entering into such contract," etc., to
the preceding section. But that section (103) deals only
with railroad corporations desiring to abandon portions
of their routes which are no longer necessary for the
operation of the road or the convenience of the public.
Hence, we must look somewhere else to find to what cor-
porations the term "such" applies, or ignore the term as
superfluous. The explanation of the phraseology of the
section is to be found in the history of the legislation on
the subject with which the section deals. The prototype
of section 104 is found in the Street Surface Railroad Law
of 1885 (Ch. 305) as section 4. That act authorized any
street surface railroad company, or any corporation own-
ing or operating a street surface railroad or railroad
route, to contract with any other such company or corpo-
ration for the use of their respective roads or routes or

any portion thereof. It further authorized the lease of such roads. Section 4 then required "each and every company entering into any contract under the power conferred by this act" to transport over any portion of the road embraced within the contract for a single fare and give transfers for that purpose. In 1890 (Ch. 565) the Railroad Law already mentioned, embracing the regulation of railroads of every kind, was enacted. By section 103 of that statute the same authority was given to street surface corporations to contract with other such corporations for their respective roads or routes. Section 104 provided for the submitting of the contract to a vote of the stockholders; and the present section 104 is a literal and exact reproduction of section 105 of that act except that the qualification has been added "the provisions of this section shall only apply to railroads wholly within the limits of any one incorporated city or village." This qualification was added by chapter 676 of the Laws of 1892, which amended many sections of the General Railroad Law. By that provision section 103 of the Laws of 1890 was entirely omitted (probably because its provisions were deemed unnecessary, the subject being covered by other sections of the statute applicable to all railroads), and in place thereof was inserted the present section 103. From this review of the legislation it is plain that "such corporation entering into such contract" embraces all corporations which by any form of contract acquire the right to use the road of another corporation. We see no reason why it does not include contracts for consolidation as well as contracts for lease and traffic agreements. Reading sections 101 and 104 together the intent of the legislature is reasonably clear. It did not intend to interfere with the fares which existing street railroad companies were entitled to charge, but it did intend to require as a condition for the exercise of the privilege of expansion in any direction that they should subject not only their newly-acquired property but their

existing property to the provisions of the statute relative to single fares and transfers. If a company ever extended its line or built a branch, under the provisions of the statute, from that time it was required to transfer passengers over the whole of its routes for a single fare. If it made any contract by which it acquired the right to use the railroad of another company it was required to transport its passengers over the joint route of both companies for the same fare that either was entitled to charge before making the contract. There is absolutely no reason why a merger or consolidation should be exempt from conditions imposed in the case of leases or traffic agreements and the courts should not import such an exemption into the statute unless the phraseology of the statute requires it. We think neither is the fact. A fuller review of this legislation may be found in the opinions rendered by Judge Edward T. Bartlett in the cases of *Griffin* v. *Interurban Street Ry. Co.* (179 N. Y. 438) and *O'Reilly* v. *Brooklyn Heights Railroad Company* (Id. 450), where it was held that the language of the present section refers to any railroad company owning or operating any railroad or railroad route within the state. Nor is anything to the contrary of this view to be found in the opinion rendered by Judge Haight in *People* v. *Brooklyn Heights Railroad Company* (187 N. Y. 48). All that was there held was that the statute did not apply to an elevated or steam railroad running on its own right of way which had been leased by a street railroad company. Judge Haight there said: "The legislature has seen fit to limit the power of street surface railroads to consolidate, lease, contract or operate other street surface railroads by imposing a condition that in case they do so contract they shall transport over their connecting lines passengers for a single fare of five cents and furnish transfers to their own intersecting lines." (p. 55.)

The question, however, still remains whether the defendant is relieved from the requirements of the section by

the limitation that it should apply only to railroads wholly within the limits of any one city or incorporated village. In 1894 when the merger or consolidation was effected, the road of the Broadway company was wholly within the city of Brooklyn, in the county of Kings. The road of the Jamaica company was partially in that city but mostly in the town of Jamaica, county of Queens. Therefore, at that time, the consolidation of the roads of the two companies did not impose on the new corporation the obligation to transport over the combined line of both for a single fare. In 1897, however, the three cities of New York, Brooklyn, Long Island City, the county of Richmond and the greater part of the county of Queens, including the town of Jamaica, were consolidated so as to form the present city of New York. Did such consolidation in the creation of the new municipality impose upon the defendant obligations and requirements from which before consolidation it was free? We think not. In the case of what might be regarded as the natural extension of an existing city or village caused by the overflow of increasing population into adjacent territory, it may be that the obligations of a railroad company would increase with the increase of the municipality. The creation of the present city of New York was not at all an extension of that character. By it were combined the old city of New York with a population of 1,800,000, the city of Brooklyn with a population of 1,000,000, and the outlying districts of Queens and Richmond, with a population of 150,000 more. The area of the county of New York is 39 miles, that of Kings 72, of Richmond 59 and of the annexed portion of Queens 58. Thus the area of the new city is over five times that of the old city of New York and over three times that of the old city of Brooklyn. Though consolidated into a single municipal corporation the autonomy of the several constituent municipalities is maintained in some degree by the creation of boroughs to which certain local administration is confided. The

charter of the new city (§ 1538) enacted that the franchises theretofore granted by any of the united and consolidated municipalities should be restricted to their respective limits before the consolidation. It would seem fair that if the privileges were not extended by consolidation neither should the obligations be. It is hardly to be supposed that either the legislature in the enactment of this section of the Railroad Law, or the defendant in the acquisition of the two roads under the provisions of that law, had in contemplation such a vast and radical change in existing conditions as was caused by the creation of the new city. It may be said that the difference between the case of what we have termed the natural expansion of the city and that of the creation of the consolidated city is one merely of degree. This is true, but many questions are merely of that character.

The order appealed from should be affirmed and judgment absolute rendered for the defendant, with costs in all courts.

Gray, Haight, Vann, Werner and Hiscock, JJ., concur; Collin, J., concurs in result.

Ordered accordingly.