EDWARD W. HOGAN, Respondent, *v.* THE LONG ISLAND
RAILROAD COMPANY, Appellant.

Railroads — passengers — New York (city of) — right of rail-
road company to collect ten cents additional from passengers
who pay fare on the train — rights of company not affected by
consolidation of suburban municipalities with Greater New
York.

A steam railroad is authorized upon certain conditions to col-
lect in the first instance ten cents over the regular fare from any
passenger who pays fare in the car except where the passage is
wholly within the limits of any incorporated city. (L. 1889, ch.
38, § 1.) When the act was passed Jamaica was outside the limits
of the then city of Brooklyn. When such additional fare was
collected from plaintiff for passage from Brooklyn to Jamaica
both were, as the result of the consolidation, constituent parts of
the city of New York. *Held*, following *Braffett* v. *Brooklyn, Q. C.
& S. R. R. Co.* (204 N. Y. 440, 447), that the right to charge the
additional fare remains unaffected by the creation of the greater
city.

*Hogan* v. *Long Island R. R. Co.*, 142 App. Div. 29, reversed.

(Argued October 21, 1912; decided November 19, 1912.)

APPEAL, by permission, from an order of the Appellate
Division of the Supreme Court in the second judicial
department, entered December 30, 1910, reversing a
judgment of the Municipal Court of the city of New
York in favor of defendant and granting a new trial.

The action is brought to recover the penalty provided
for in section 39 (now 59) of the Railroad Law (Cons.
Laws, ch. 49), entitled "Penalty for excessive fare," and
the section reads as follows: "Any railroad corporation,
which shall ask or receive more than the lawful rate of
fare, unless such overcharge was made through inadvert-
ence or mistake, not amounting to gross negligence, shall
forfeit fifty dollars, to be recovered with the excess so
received by the party paying the same; but no action can
be maintained therefor, unless commenced within one
year after the cause of action accrued."

The facts upon which the plaintiff bases his claim to a recovery under this statute are as follows: The plaintiff entered an express train of the defendant at its Nostrand avenue station in the borough of Brooklyn on the 1st day of April, 1909, at one-thirty o'clock in the afternoon, to take passage to Jamaica, a distance of eight and one-tenth miles. These two stations, Nostrand avenue and Jamaica, as well as the intervening stretch of defendant's road, were then wholly within the territorial limits of the city of New York. On the day mentioned, and prior thereto, the defendant maintained a ticket office at the Nostrand avenue station, which was open for the purchase of passage tickets between the hours of five-thirty each morning to one-thirty each following morning. The plaintiff did not purchase a ticket but offered his fare in cash, from which the ticket collector took and kept thirty cents, at the same time handing to the plaintiff a duplex check or ticket showing upon its face that it was redeemable at any of the defendant's ticket offices to the extent of ten cents; and the ticket collector also orally informed the plaintiff of that fact. The plaintiff did not accept the duplex check, but threw it aside. Upon his return trip the plaintiff purchased a ticket at Jamaica, for which he paid the regular fare of twenty cents, and upon the discovery then made he bases his claim that the defendant collected from him excessive fare.

The defendant concedes that its established rate of fare between Nostrand avenue and Jamaica was twenty cents, although it had the statutory right to charge twenty-seven cents, upon the basis of three cents per mile and three cents for each fraction of a mile; and it contends that in charging the plaintiff ten cents more than the established rate it did not exact and receive excessive fare, but simply a refundable train charge which it made and collected under the authority of chapter 38 of the Laws of 1889, entitled "An act to regulate the payment of fares upon railroads." This statute reads

as follows: "Section 1. It shall be lawful for any company owning or operating a steam railroad in this state, to demand and collect an excess charge of ten cents over the regular or established rate of fare, from any passenger who pays fare in the car in which he or she may have taken passage, *except where such passage is wholly within the limits of any incorporated city in this state,* provided, however, that it shall be the duty of such company to give to any passenger paying such excess, a receipt or other evidence of such payment, and which shall legibly state that it entitles the holder thereof to have such excess charge refunded, upon the delivery of the same at any ticket office of said company, upon the line of their railroad, and said company shall refund the same upon demand; and provided further that this act shall not apply to any passenger taking passage from a station or stopping place when tickets cannot be purchased during half an hour previous to the schedule time for the departure of said train, on which such passenger takes passage."

The action was commenced in the Municipal Court of the borough of Brooklyn, in the city of New York, and it resulted in a judgment for the defendant. Judge BOGENSHUTZ, before whom it was tried, wrote a very careful opinion in which he worked out the conclusion that the plaintiff could not recover because (1) the penal statute (section 59, Railroad Law) had no application, and (2) that the statute (L. 1889, ch. 38), under which the defendant assumed to act, contained no provision for a penalty. The learned Appellate Division, by a bare majority, took a different view and decided that as the two stations, Nostrand avenue and Jamaica, were concededly within the limits of a single municipality, the statute of 1889 had no application, and that the excess charge which the plaintiff was compelled to pay was, therefore, "excessive fare." The case comes to this court upon an order granting the defendant leave to appeal.

*Dominic B. Griffin* and *Joseph F. Keany* for appellant. The defendant did not charge plaintiff "more than the lawful rate of fare" within the meaning of the term "fare" as used in section 39 (now 59) of the Railroad Law. (*Vail* v. *R. R. Co.*, 147 N. Y. 381; *Manhattan Co.* v. *Kaldenberg*, 165 N. Y. 8.) There can be no recovery in this action for any violation of chapter 38 of the Laws of 1889, because it does not allow of the penalty sued for; and if it did, defendant's right to make the train charge was not affected by the act of consolidation of the city of New York, adding the former city of Brooklyn and the former town of Jamaica to that city. (*Nellis* v. *N. Y. C. R. R. Co.*, 30 N. Y. 517; *Monnier* v. *N. Y. C. & H. R. R. R. Co.*, 175 N. Y. 290; *Braffett* v. *B., Q. C. & S. R. R. Co.*, 204 N. Y. 440.)

*A. F. Van Thun, Jr.*, and *Fullerton Wells* for respondent.

*George S. Coleman* and *H. M. Chamberlain* for public service commission. The exception in favor of cities contained in the act of 1889 itself has the effect of limiting the operation of the grant. With the enactment of the Greater New York charter the exception in the act of 1889, being applicable to cities generally, became applicable to the greater city of New York. (*Rowell* v. *Janvier*, 151 N. Y. 60; *I. C. R. R. Co.* v. *Chicago*, 176 U. S. 646.) Whatever privileges the company acquired or enjoyed under the act of 1889 prior to the enactment of the Greater New York charter were not preserved to the company by the provisions of the charter. (L. 1901, ch. 466, §§ 1538, 1614.)

WERNER, J. This action was brought, as above stated, to recover the penalty of fifty dollars which the statute (section 59, Railroad Law) imposes upon a railroad corporation for asking or receiving more than the lawful rate of fare, unless such overcharge was made

through inadvertence or mistake not amounting to gross negligence. The facts are not in dispute. The rate of fare established by the defendant between its stations at Nostrand avenue and Jamaica in Brooklyn is twenty cents. The fare which the statute authorizes it to charge between these stations is twenty-seven cents. The amount actually collected from the plaintiff was thirty cents. As there is no claim that this was due to inadvertence or mistake on the part of defendant's conductor, it follows that the defendant did ask and receive from the plaintiff "more than the lawful rate of fare," unless the overcharge can be justified by the statute upon which the defendant relies. That statute (L. 1889, ch. 38) gives to railroad corporations, owning or operating steam railroads within this state, the right to demand and collect "an excess charge" of ten cents over the regular or established rate of fare, from any passenger who pays fare in the car except where the passage "is wholly within the limits of any incorporated city in this state," and the right to make this overcharge is subject to two conditions. The first is that the railroad company shall give to the passenger a receipt or evidence of payment stating that it entitled the holder to a refund of the excess charge at any of the company's ticket offices; and the second is that the right to make the overcharge exists only as to a passenger from a station at which tickets can be purchased during the half hour immediately preceding the departure of the train on which the passage is taken. It is conceded that both of these conditions had been complied with by the defendant, and the question arises, therefore, whether the defendant is to be subjected to the penalty provided for in section 59 of the Railroad Law, or whether it was authorized by chapter 38 of the Laws of 1889 to make the excess charge of ten cents above the regular or established fare.

The Municipal Court decided that this is an action for a penalty under section 59 of the Railroad Law and

upon that point there can be no disagreement. That court went further, however, and held that the defendant, in assuming to exact from the plaintiff an excess charge of ten cents under chapter 38 of the Laws of 1889, could in no event be held liable under the penal statute because the money thus taken was not excessive fare but only an additional charge which it agreed to refund upon demand. Personally I am inclined to this view. The penal statute, as originally enacted in 1857, was entitled " An act to prevent extortion by railroad companies," and its context, which has not been materially changed since then, indicates that its purpose was precisely what its title plainly expressed. It was an act for the benefit of the individual passenger and against the railroad companies, and it imposed the prescribed penalty only for exacting and receiving excessive fare. The statute of 1889, on the other hand, was enacted obviously for the benefit of the railroad companies and the traveling public, for it penalizes the individual passenger to the extent of an additional but refundable charge whenever he fails to provide himself with a ticket at a station where he has the opportunity to get one. (*Monnier* v. *N. Y. C. & H. R. R. R. Co.,* 175 N. Y. 281, 290.) When the defendant, therefore, assumed to exact and receive an excess charge for the plaintiff's failure to provide himself with a ticket, and gave him a token by which it agreed to refund the excess charge on demand, it did not violate the penal statute (§ 59) or incur its penalty. My associates do not concur in that view, however, and I pass to the consideration of a question upon which we are all agreed.

Under chapter 38 of the Laws of 1889, any railroad owning or operating a steam railroad within the state is given the right " to demand and collect an excess charge of ten cents over the regular or established rate of fare, from any passenger who pays fare in the car in which he or she may have taken passage, *except where such passage is wholly within the limits of any incorporated city*

*in this State.*" As bearing upon the question whether this exception in the statute applies to the case at bar, it is conceded that in 1889 Jamaica was outside of the limits of Brooklyn, which was then an independent city, and that in 1909, when the transaction in suit occurred, both Brooklyn and Jamaica were constituent parts of the greater City of New York, created in 1897 by the consolidation of the cities of New York, Brooklyn, Long Island City, the county of Richmond and the larger part of the county of Queens. From 1889 until 1897 the defendant clearly had the right to make the excess charge provided for in chapter 38 of the Laws of 1889 in any case where a passenger, taking passage from Nostrand avenue in Brooklyn to Jamaica, paid his fare in cash at a time when he could have procured a ticket; and the real question in the case is whether it lost that right by the consolidation of these cities and counties in 1897. That question we regard as settled by authority. In the recent case of *Braffett* v. *Brooklyn, Q. C. & S. R. R. Co.* (204 N. Y. 440, 447) the plaintiff sued for a penalty given by certain sections of the Railroad Law which imposed upon street surface railroad companies the obligation to carry passengers for a single fare upon railroads " wholly within the limits of any one incorporated city or village." There the lines of railroad extended through several municipalities under conditions which entitled the consolidated railroad companies to charge more than a single fare, and the question was whether they had lost that right by the consolidation of the municipalities into one city. Chief Judge CULLEN wrote for the court in the *Braffett* case, and we can do no better than to quote his argument here. " Did such consolidation in the creation of the new municipality impose upon the defendant obligations and requirements from which before consolidation it was free ? We think not. In the case of what might be regarded as the natural extension of an existing city or village caused by the

overflow of increasing population into adjacent territory, it may be that the obligations of a railroad company would increase with the increase of the municipality. The creation of the present city of New York was not at all an extension of that character. By it were combined the old city of New York with a population of 1,800,000, the city of Brooklyn, with a population of 1,000,000, and the outlying districts of Queens and Richmond, with a population of 150,000 more. The area of the county of New York is 39 miles, that of Kings 72, of Richmond 59, and of the annexed portion of Queens 58. Thus the area of the new city is over five times that of the old city of New York and over three times that of the old city of Brooklyn. Though consolidated into a single municipal corporation the autonomy of the several constituent municipalities is maintained in some degree by the creation of boroughs to which certain local administration is confided. The charter of the new city (Section 1538) enacted that the franchises theretofore granted by any of the united and consolidated municipalities should be restricted to their respective limits before the consolidation. It would seem fair that if the privileges were not extended by consolidation neither should the obligations be. It is hardly to be supposed that either the legislature in the enactment of this section of the Railroad Law, or the defendant in the acquisition of the two roads under the provisions of that law, had in contemplation such a vast and radical change in existing conditions as was caused by the creation of the new city. It may be said that the difference between the case of what we have termed the natural expansion of the city and that of the creation of the consolidated city is one merely of degree. This is true, but many questions are merely of that character." This argument fully covers the case at bar, and answers, we think, the suggestions contained in the brief of counsel for the public service commission.

There is no distinction in principle between the case of

*Braffett* and the case at bar. There the railroad extended through separate municipalities until they were taken into the city of New York by the consolidation of 1897. Before the consolidation the defendant in that case and its predecessors clearly had the right to charge more than a single fare for a passage over territory which was later wholly within a single incorporated city, and it was held that the consolidation did not affect that right. Here the stretch of railroad over which the plaintiff took passage also originally extended through separate municipalities which, by the consolidation of 1897, were brought wholly within the limits of an incorporated city. Before the consolidation the defendant had the conceded right to collect the excess charge of ten cents from a cash passenger under the circumstances which characterized the transaction with the plaintiff. Under the decision in the *Braffett* case that right remains unaffected by the creation of the greater city.

The order of the Appellate Division should be reversed and the judgment of the Municipal Court affirmed, with costs to the appellant in all courts.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, CHASE and COLLIN, JJ., concur.

Order reversed, etc.