### LOWENSTEIN v. INTERNATIONAL RY. CO.

(Supreme Court, Trial Term, Erie County. January, 1913.)

1. CARRIERS (§ 12*)—FARES—TRANSFERS—STATUTES—APPLICABILITY.

   A street railroad corporation formed by the consolidation of three street railroad companies. is within Railroad Law (Laws 1892, c. 676) § 104, requiring contracting corporations to carry passengers for one fare and to give transfers for a continuous passage.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

2. CARRIERS (§ 20*)—FARES—TRANSFERS—STATUTES—"REFUSAL."

   Where plaintiff, a passenger on contracting lines, received a transfer, and the conductor on the second line told him to keep it, that it was good on the third line, on which was plaintiff's destination, but the conductor on the latter line refused to accept the transfer and required him to pay another fare, there was a violation of Railroad Law (Laws 1892, c. 676) § 104, requiring contracting corporations to carry passengers for one fare and to give transfers for a continuous passage and providing a penalty for a "refusal" to comply therewith, since, assuming the last conductor to be right, the act of the conductor on the second line in failing to take up the transfer and issue another for the third line constituted a refusal to comply with the section.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49, 133, 927; Dec. Dig. § 20.*

   For other definitions, see Words and Phrases, vol. 7, pp. 6031–6033.]

Action by Henry Lowenstein against the International Railway Company. Judgment for plaintiff.

See, also, 75 Misc. Rep. 357, 132 N. Y. Supp. 653.

Hamilton Ward, of Buffalo, for plaintiff.

Norton, Penney, Spring & Moore, of Buffalo (P. M. Albro, of Buffalo, of counsel), for defendant.

POOLEY, J. This is an action for a penalty for charging excessive fares, submitted by agreement of counsel at trial.

In January, 1892, the Buffalo Railway Company, the West Side Street Railway Company, and the Crosstown Street Railway Company, three street railroad corporations owning different railroad properties, entered into an agreement (known as the "Milburn Agreement") with the city of Buffalo, a municipal corporation, by which, for a valuable consideration, the said street railroad companies agreed to abolish all transfer charges them in effect, and that thereafter they would charge a uniform fare of five cents for a continuous trip by the most direct route from any point on any of the street railroads owned and operated by said companies, to any other point on either of said roads. This contract was duly executed under the several seals of the parties, and was thereafter ratified by an act of the Legislature. The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract provided, also, that it should bind the successors and assigns of the parties to it. Operations were carried on pursuant to this arrangement, various lines of railroad were constructed and operated until a time came when regular service was maintained by this defendant on Hertel avenue, Main street, and Fillmore avenue; the passengers being permitted to ride from any point on Hertel avenue to any point on Fillmore avenue, under certain rules and regulations requiring transfers from Hertel to Main street line and then from Main to Fillmore line, but for one fare of five cents.

[1] Prior to the time of the alleged excess charge, the defendant had operated the Hertel avenue line, and had acquired practically all of the stock of the company operating the Hertel avenue line, and was operating all the street railroad lines of the three companies above named, having acquired them and united them into one system. Thus the defendant was bound by the terms of said agreement regarding the transportation of passengers for a single fare of five cents from any point on any one of these lines to a point on the same or any other of said lines by the most direct route.

[2] Plaintiff boarded a Hertel avenue car at some point on Hertel avenue, his destination being a point on the Fillmore avenue line. He paid his fare, informed the conductor of his destination, and received a Fillmore avenue transfer. He was carried on Hertel avenue to the junction of Main street, and there took the first Main street car, tendered his transfer, and was informed by the Main street line conductor that the transfer was good on the Fillmore line. At the junction of Main and Fillmore, he boarded a Fillmore avenue car, tendered the transfer, and the Fillmore conductor refused to accept it and told him it was not good, and compelled him to pay an additional fare of five cents. The practice seems to have been for the conductor of the initial car to deliver a transfer punched for the destination line, and, when tendered to the conductor of the intermediate line, he would take it up and issue another transfer for the destination line; thus the transfers when turned in to the company would constitute a complete record of the trip and account for the carriage of the passenger on each of the three lines. This record was only of importance to the carrier, and was of no consequence to the passenger, except that he should exercise reasonable care that he conformed to the reasonable rules of the company. The plaintiff, it seems to me, did all he could be expected to do when he tendered his transfer to the Main street conductor, was advised by him that the transfer was good on the Fillmore line, and then tendered the transfer to the Fillmore line conductor. The fault was first with the Main street line conductor in failing to take up the transfer and deliver a second one, assuming that this was the rule, and, if his instructions to the passenger were at fault and resulted in the passenger being obliged to pay another fare, it was a violation of the contract, and a violation of section 104 of the Railroad Law. This section reads:

"Every such corporation shall, upon demand, give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract. * * * For every refusal to comply with the requirements of this section the corporation so refusing shall forfeit fifty dollars to the aggrieved party."

The action of the Main street line conductor amounted to a refusal, if the Fillmore line conductor was right in declining to accept the transfer tendered. If the Fillmore line conductor was wrong in declining the transfer, then clearly the plaintiff's rights were violated. The transfer issued should have been a transfer entitling the passenger to one continuous trip, but under the ruling of the Fillmore line conductor it was not good. If it was not good, the Main street line conductor was wrong in refusing to issue a valid transfer when demanded. Plaintiff was entitled, upon paying fare on the Hertel avenue line and demanding a transfer, to be carried to his destination on the Fillmore line by the route prescribed by the company, and the company was called upon to carry him under the direction of its agents and servants regarding the details of the trip, the record of which was entirely the concern of the company.

" 'Such corporation entering into such contract' embraces all corporations which by any form of contract acquire the right to use the road of another corporation. We see no reason why it does not include contracts for consolidation as well as contracts for lease and traffic agreements." Braffett v. Brooklyn, Q. C. & S. R. R., 204 N. Y. 440, 445, 97 N. E. 888, 890.

This interpretation supersedes those in the earlier cases and must be deemed conclusive. The issue of transfers over the route covering parts of two or more distinct lines is evidence of at least a traffic agreement, and, it seems to me, brings the case squarely within the latest ruling on the subject by the Court of Appeals.

The plaintiff is entitled to judgment.