CATALANO v. INTERNATIONAL RY. CO.

(Supreme Court, Special Term, Erie County. January, 1914.)

1. CARRIERS (§ 20*)—PASSENGERS—TRANSFERS.

Public Service Commission Law (Consol. Laws, c. 48) § 49, subd. 7, provides that every street service railroad corporation entering into a contract with another such corporation, as provided in section 78 of the Railroad Law (Laws 1890, c. 565, as amended by Laws 1905, c. 695), shall carry between any two points on the railroads any passenger desiring to make a continuous trip for a single fare, and such corporation shall, without extra charge, give to each passenger paying a single fare a transfer entitling the passenger to one continuous trip to any point of any railroad embraced in such contract, and for every refusal to comply with the subdivision the corporation shall forfeit $50 to the aggrieved party. Railroad Law, § 78, provides that any railroad corporation may contract with another for the use of their respective routes, and that such contracts shall be executed by the contracting corporations under their seals, and, if it be a lease of any such road and for a longer period than one year, it shall not be binding unless approved by the votes of stockholders owning at least two-thirds of the stock of the corporation. *Held*, that where two street railroad corporations, though separate corporate entities, had the same office, officers, and directors, and used and equipped cars interchangeably, paid operating expenses from the gross receipts of both, and were for all practical purposes one line, a passenger on one road could require a transfer to the other without extra charge, and could recover the statutory penalties for refusal to issue such transfer, notwithstanding there was no written contract between the corporations for the lease of one of the lines and though the arrangement between the companies was purely informal.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49, 133, 927; Dec. Dig. § 20.*]

2. CARRIERS (§ 20*)—ACTION FOR PENALTY—VARIANCE.

The fact that a street car passenger, suing for the penalty imposed by Public Service Commission Law (Consol. Laws, c. 48) § 49, subd. 7, for refusal of a street service railroad to issue a transfer, erroneously alleged in the complaint that defendant had subjected itself to a penalty under Railroad Law, § 104, was immaterial; that section having been incorporated into Public Service Commission Law, § 49, subd. 7.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49, 133, 927; Dec. Dig. § 20.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. COURTS (§§ 189, 190*)—CITY COURTS.

Since the City Court of Buffalo has only limited jurisdiction, great liberality of pleading is permitted, and the City Court Act gives an appellate court a wide discretion to disregard technical errors not affecting the merits on an appeal from a judgment of the City Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 409, 412, 413, 429, 458; Dec. Dig. §§ 189, 190.*]

Appeal from City Court of Buffalo.

Action by Philip Catalano against the International Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed. See, also, 137 N. Y. Supp. 118.

Preston M. Albro, of Buffalo, for appellant.
Philip Catalano, of Buffalo, for respondent.

WHEELER, J. This action was originally begun against the Crosstown Street Railway Company, but inasmuch as since the commencement of this action the Crosstown Street Railway Company was merged and consolidated with the International Railway Company, and ceased to exist as a separate corporation, therefore said International Railway Company was substituted as a defendant in the place and stead of the original defendant the Crosstown Street Railway Company. The action was begun to recover a penalty of $50, for a failure and refusal to deliver to him a transfer from the Crosstown road entitling him to ride to his destination over the line of the International Railway Company.

The plaintiff became a passenger on a car running over the tracks of the Crosstown road on Hertel avenue. This line connected with a line of the International Railway at Niagara street, and the plaintiff requested of the conductor a transfer entitling him to continue his trip over the line of the International Railway in Niagara street, to his destination. This was refused, and this action was begun to recover the penalty imposed by the statute for such refusal.

The main question litigated was whether the plaintiff was entitled to the transfer demanded.

This case has been twice tried. On the first trial a judgment was given in the court below in favor of the plaintiff. An appeal was taken from that judgment, and the judgment reversed by this court, and a new trial ordered. Upon the decision of that appeal, the writer of this opinion wrote for reversal, handing down an opinion, which is reported in 137 N. Y. Supp. at page 118, in which he held that upon the evidence as presented upon the first trial the plaintiff was not entitled to recover.

The only evidence given on that trial as to the relations existing between the Crosstown Railway Company and the International Railway Company was the so-called "Milburn Agreement," and we held that that agreement did not bring the case as then presented within the provisions of section 78 of the Railroad Law (Laws 1890, c. 565, as amended by Laws 1905, c. 695), and the judgment rendered below could not

be sustained. We therefore reversed the judgment and ordered a new trial. Such trial has been had, and resulted again in a judgment in favor of the plaintiff, and from the judgment rendered this appeal has been taken.

We have no occasion to change or modify the views entertained and expressed in our first opinion in this case as to the force and effect of the Milburn agreement.

On the second trial, however, new and additional evidence was given by the plaintiff as to the traffic arrangement between the two street railway companies, which presents a new phase of the case.

The question now presented is whether, in view of this new and additional evidence, a case has been made which will support a recovery. The evidence given on the second trial shows that: The Crosstown Street Railway Company and the International Railway Company were two separate and distinct corporations, each owning lines of street railways in the city of Buffalo. That the International Railway Company owned all of the capital stock of the Crosstown Railway Company. That the boards of directors of the two companies were composed of the same persons. That the presidents and executive officers were the same, and that the two companies had the same office. All the cars and tracks of the Crosstown Company were cared for and managed by the International Company. The International hired and paid the employés operating both roads. The International, in short, had entire charge and operated both systems. It received all the gross receipts of both companies and paid the operating expenses, and, after the expenses for maintenance and operation had been taken from the common fund, the balance was distributed according to the relative trackage of the two companies for the purpose of paying the interest on the bonded indebtedness of the two companies. This system of operating the two companies had been in force for many years; in fact, since the making of the so-called "Milburn Agreement." Both companies owned cars which they used interchangeably. Such, in brief, was the method of doing business by the two different companies, and while separate corporate existences were maintained, as matter of fact, the two companies were one in operation and in interest. It is true, there existed no formal lease between them, no written contract that the International would do the things it did do, or was permitted to do, but evidently a tacit agreement or understanding, evidenced by their course of business, for a general interchange of traffic between the two companies. It makes little difference what we call this arrangement, but it represented and was tantamount to a contract between the two for the doing of what was done—an arrangement which might doubtless be terminated at any time by either party, but which, so long as the parties continued to act under it, measured and defined their obligations and duties and responsibilities each to the other.

[1] It is contended by the appellant that this traffic arrangement, such as it was, did not bring the case within the provisions of the statute providing for a penalty for a refusal to give the plaintiff the transfer demanded, because there existed no formal written contract "exe-

cuted by the contracting corporations under the corporate seal of each corporation," nor any lease "approved by the votes of stockholders owning at least two-thirds of the stock of each corporation," as provided by section 78 of the Railroad Law.

That we may have a clear knowledge of the sections bearing on the subject, we quote them here at length:

Section 49, subd. 7, Public Service Commissions Law (Consol. Laws, c. 48):

"Until and except as the Public Service Commission shall otherwise prescribe as to any street railroad corporation or corporations, pursuant to the provisions of this chapter, every street service railroad corporation entering into a contract with another such corporation as provided in section 78 of the Railroad Law shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare not higher than the fare lawfully chargeable by either such corporations for an adult passenger. Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare. For every refusal to comply with the requirements of this subdivision the corporation so refusing shall forfeit $50 to the aggrieved party."

### Section 78 of the Railroad Law provides:

"Any railroad corporation or any corporation owning or operating any railroad or railroad route within this state may contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract. Such contract may provide for the exchange or guarantee of the stock and bonds of either of such corporations by the other and shall be executed by the contracting corporations under the corporate seal of each corporation, and if such contract shall be a lease of any such road and for a longer period than one year, such contract shall not be binding unless approved by the votes of stockholders owning at least two-thirds of the stock of such corporation which is represented and voted upon in person or by proxy at an annual meeting of the stockholders for the purpose of electing directors, called in the manner prescribed by law, providing that the notice of such meeting shall state that one of the purposes thereof will be the approval of such lease, or at a meeting called, separately for that purpose upon a notice stating the * * * meeting," etc.

There can be no question in our mind but that the arrangement under which the two companies operated would bring them fairly and squarely within the provisions of section 78 of the Railroad Law, had such arrangement been incorporated into a written contract formally executed by the companies under their corporate seals. Braffett **v.** Brooklyn Q. C. & S. R. R. Co., 204 N. Y. 440, 97 N. E. 888.

It was said in that case (referring to section 49 of the Public Service Commission Law, which is section 104 of the Railroad Law as it existed before it was incorporated into the Consolidated Laws) that:

"It is plain that 'such corporation entering into such contract' embraces all corporations which by any form of contract acquire the right to use the road of another corporation. We see no reason why it does not include con-

tracts for consolidations as well as contracts for lease and traffic agreements. Reading sections 101 and 104 together, the intent of the Legislature is reasonably clear. It does not intend to interfere with the fares which existing street railroad companies were entitled to charge, but it did intend to require as a condition for the exercise of the privilege of expansion in any direction that they should subject not only their newly acquired property but their existing property to the provisions of the statute relative to single fares and transfers. If a company ever extended its line or built a branch, under the provisions of the statute, from that time it was required to transfer passengers over the whole of its route for a single fare. If it made any contract by which it acquired the right to use the railroad of another company, it was required to transport its passengers over the joint route of both companies for the same fare that either was entitled to charge before making the contract. There is absolutely no reason why a merger or consolidation should be exempt from conditions imposed in the case of leases or traffic agreements, and the courts should not import such an exemption into the statute."

It is contended, however, by the appellant that, in the absence of a formal contract such as is specified by section 78, the plaintiff has not brought himself within the provisions of that section so as to entitle him to recover the penalty sued for. Can the street railway company avail itself of that situation as a defense?

The statute directs how a contract between two railway companies shall be evidenced, and, in the absence of a compliance with such requirements, probably either of the contracting parties would be at liberty to terminate the agreement and cease to act under it, unless some equitable considerations should forbid such a course of action. But so long as the parties to such an arrangement or contract do act under it, can they, or either of them, defeat the object and purposes of the statute by a failure on their part to observe the directions of the statute as to the manner and method of evidencing their agreement?

After all, were not the provisions of the statute, as to how the contract or arrangement should be evidenced, incorporated into it principally for the protection of the corporations and their stockholders? These provisions have nothing to do with the traveling public who are sought to be protected by the requirements as to the giving of transfers. So long as the railroads operate their roads under the conditions entitling the traveling public to the benefit of transfers without extra charge, we do not think it lies with the railroad company to plead, as a defense to an action to enforce the penalty given, that they themselves have failed and omitted to observe the directions of the statute as to how the contract or arrangement between them shall be evidenced and executed. To hold otherwise would be to hold that a party may take advantage of his own wrong or neglect of duty. Are not the provisions of the statute as to the method of execution of the contract directory merely—at least so far as the traveling public is concerned, when the companies concerned are operating under just the arrangement as to terms and conditions which require the giving of transfers?

The plain purpose and intent of the Legislature was that public service corporations of this character, when operating as the Crosstown and International Street Railways were, should exact from passengers but a single fare for transportation from start to destination, and it would be to defeat this plain purpose and intent to hold that street car com-

panies can circumvent the statute by simply omitting to make a proper written contract, although doing the very same things by virtue of a verbal or tacit arrangement between them.

As was said in O'Reilly v. Brooklyn Heights R. Co., 95 App. Div. 261, 89 N. Y. Supp. 47, such a defense, if successful, "would permit the defendant to enjoy the privileges of the statute without the reciprocal advantage to the public which was contemplated by the transfer provisions of the law."

We reach no other conclusion than that the plaintiff was entitled to recover.

[2] We attach little importance to the objection raised by the defendant that the plaintiff in his complaint erroneously alleged that the defendant had subjected itself to a penalty under the provisions of section 104 of the Railroad Law, which in fact had been incorporated into the Public Service Commissions Law under subdivision 7 of section 49 of that statute.

[3] The City Court of Buffalo is one of limited jurisdiction, where great liberality of pleading is permitted, and on appeal from its judgment the City Court Act gives wide discretion in the appellate court to disregard mere technical errors which do not affect the substantial merits of the case.

It is also contended the plaintiff did not establish by sufficient evidence a proper and timely demand for the transfer in question. That, we think, was a question of fact for the court below, and, it having found on that issue in favor of the plaintiff, we are not disposed to disturb its conclusion.

The judgment appealed from is affirmed, with costs of the appeal. So ordered.