**746**  People ex rel. Brooklyn City R. R. Co. *v.* Nixon.

First Department, November, 1920.      [Vol. 193.

The People of the State of New York ex rel. The Brooklyn City Railroad Company, Relator, *v.* Lewis Nixon, Composing and Constituting the Public Service Commission of the State of New York for the First District, The Public Service Commission of the State of New York for the First District, and The City of New York, Respondents.

First Department, November 10, 1920.

Street railways — right of Brooklyn City Railroad Company to charge two fares on Flatbush avenue line in city of New York — lease of said railroad lines and reduction of fare by lessee — return of railroad to lessor on insolvency of lessee — consents of municipal authorities construed.

As the extensions of the franchises of the Brooklyn City Railroad Company, granted in 1890, 1892 and 1894, for the operation of its lines over Flatbush avenue to the boundary line between the former towns of Flatbush and Flatlands, and to the Kings highway and to Jamaica Bay, contained no specific provision in regard to the rates of fare to be charged, but only provided that the local consents were given upon the express condition that the statutes then in force shall be complied with by said railroad company, which enactments as amended are now embodied in section 181 of the Railroad Law, and as under said extensions said railroad company collected two fares, one in the city of Brooklyn and one in the towns of Flatbush and Flatlands, until it leased its railroad to the Brooklyn Heights Railroad Company, it was error for the Public Service Commission to determine that the Brooklyn City Railroad Company, having regained possession of its lines after the insolvency of its lessee, is not entitled to charge more than a single fare for a continuous ride on its lines in the present city of New York, even though the lessee of said company during the time it operated said lines voluntarily reduced the rate to a single fare.

The subsequent annexation of Flatbush and Flatlands to the city of Brooklyn did not alter said franchise rights nor did the consolidation of Brooklyn with the city of New York impose upon the Brooklyn City Railroad Company any obligations or requirements from which it was then free.

Consents of the municipal authorities examined, and *held,* that an extension of its lines by said Brooklyn City Railroad Company was neither to affect the rate of fare theretofore authorized nor to give the right because of said extension to exact any increase in fare.

Certiorari issued out of the Supreme Court and attested on the 24th day of November, 1919, directed to Lewis Nixon,

composing and constituting the Public Service Commission of the State of New York for the First District, and another, commanding them to certify and return to the office of the clerk of the county of New York all and singular their proceedings had relative to the fixing of the fare on the Flatbush Avenue line of the Brooklyn City Railroad Company, and in the matter of the hearing as to the manner in which the lines of said company are operated.

The city of New York was permitted to intervene and was made a party defendant herein by an order of the Supreme Court made at the New York Special Term and bearing date the 4th day of December, 1919.

*William N. Dykman* of counsel [*Cullen & Dykman,* attorneys], for the relators.

*Terence Farley* of counsel [*John A. Mullen* with him on the brief], for the respondent The Public Service Commission.

*Willard S. Allen* of counsel [*Edgar J. Kohler* and *Herbert S. Worthley* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the City of New York.

PAGE, J.:

The Brooklyn City Railroad Company, on December 19, 1853, was granted franchises to construct and operate a double-track railroad along and upon certain streets and avenues commencing at the termination of Fulton street at or near Fulton ferry among which was: "4. Upon Fulton Street, Fulton Avenue and Flatbush Avenue, when graded, to the City Line." This grant provided that the rate of fare for each passenger, and the license fee for each car should be upon the respective lines: "4. Flatbush Avenue route, fare not to exceed five cents; license fee, twenty dollars." On March 17, 1860, the local authorities of the town of Flatbush and the Flatbush Plank Road Company granted the right to the Brooklyn City Railroad Company to construct and operate a railroad from the city line to Vernon avenue, and the said company agreed not to charge a fare in excess of five cents each way on that part of their road lying in the town of Flatbush. On November 21, 1890, a further right was granted to said company to extend its tracks in the town of Flatbush

from its then terminus at Vernon avenue to the boundary line between the towns of Flatbush and Flatlands. On the 21st day of March, 1892, consent was given by the town board of Flatlands for the said company to extend its railroad from the boundary line between the towns of Flatbush and Flatlands to the Kings highway. On May 1, 1894, the commissioners of highways of the town of Flatlands granted the said company the right to extend its line to Jamaica Bay. The town of Flatbush was annexed to the city of Brooklyn in 1894, and the town of Flatlands was annexed to the city of Brooklyn in 1896. (See Laws of 1894, chap. 356; Laws of 1894, chap. 450, as amd. by Laws of 1895, chap. 313.) The city of Brooklyn was merged with the city of New York on January 1, 1898. (See Greater New York Charter [Laws of 1897, chap. 378], §§ 1, 1611 et seq.) The second grant by the town of Flatbush and the first grant by the town of Flatlands contained no specific provision in regard to rates of fare to be charged, but they contained the following clause: " This consent is given upon the express condition that the mandatory provisions of Chapter 252 of the Laws of 1884, pertinent thereto, and acts amendatory thereof, shall be complied with by said Brooklyn City Railroad Company." The second consent to the extension of its line in the town of Flatlands was upon the express condition that all the provisions of chapter 565 of the Laws of 1890 and the acts amendatory thereof applicable thereto should be complied with. At that time chapter 565 of the Laws of 1890, being the former Railroad Law (Gen. Laws, chap. 39), had been amended and in part superseded, and section 101, relating to fares, had been re-enacted and amended by chapter 676 of the Laws of 1892. These enactments have been extended somewhat by amendment (Laws of 1897, chap. 688) and the existing law will be found in section 181 of the Railroad Law (Consol. Laws, chap. 49; Laws of 1910, chap. 481).

On the Flatbush avenue line the Brooklyn City Railroad Company collected two fares, one in the city of Brooklyn and one in the towns of Flatbush and Flatlands from 1860 until it leased its railroads to the Brooklyn Heights Railroad Company in 1893. In 1896 the Brooklyn Heights Railroad Company reduced the fares to five cents for a continuous trip over the entire line. In 1907 the Public Service Commissions Law

was passed (Laws of 1907, chap. 429), and in 1910 that act was re-enacted and amended (Consol. Laws, chap. 48; Laws of 1910, chap. 480). Pursuant to the provisions of this statute the Brooklyn Heights Railroad Company filed with the Public Service Commission of the First District a " local and joint passenger tariff " effective June 1, 1914, wherein a five-cent fare was provided for on the Flatbush avenue line. The Brooklyn Heights Railroad Company was placed in the hands of a receiver in or about July, 1919, and on October 1, 1919, default was made in the payment of the installment of rent due on that day and thereupon the Brooklyn City Railroad Company demanded that the railroads embraced in the lease be returned to it for operation. By an order made October 16, 1919, the United States District Court instructed the receiver to refuse to adopt the lease and to turn over the railroad in question to the Brooklyn City Railroad Company. In the early part of October, 1919, the Brooklyn City Railroad Company filed with the Public Service Commission a local and joint passenger tariff effective October 9, 1919, that provided for two five-cent fares on the Flatbush avenue line. After the Brooklyn City Railroad Company resumed operations it commenced collecting a second fare in a portion of the city that was formerly Flatbush, and ceased to operate its cars through Flatlands, running shuttle cars from the old line of Flatbush to the terminus. Complaint having been made to the Public Service Commission of the First District against the double fares and the change of cars, a hearing order was made. On October 31, 1919, the Commission made an order directing through service to be resumed on the Flatbush avenue line. The order provided that it should not prejudice the rights of the company to charge lawful fares, nor the rights of the People nor the rights of the Public Service Commission to regulate rates of fares. This order was accepted by the railroad company and is not involved in this proceeding. The hearings were continued before the Commission and resulted in an order dated November 19, 1919. This order recites: " The Commission being of the opinion after said hearing that the Brooklyn City Railroad Company is at present acting in violation of law in charging and collecting more than a single fare of five (5) cents for one continuous ride on its Flatbush Avenue

First Department, November, 1920.          [Vol. 193.

Line in the City of New York " it is " Ordered that the Brooklyn City Railroad Company forthwith comply with the law by charging and collecting not more than a single fare of five (5) cents from any passenger for one continuous ride from any point on its Flatbush Avenue line to any other point thereon within the limits of the City of New York." The Commission did not purport to inquire into the reasonableness of the rate or to exercise any of its powers to regulate rates. The question determined by it, and the sole question before us, is the legal right of the Brooklyn City Railroad Company to charge more than one five-cent fare for each passenger carried by it from any point on its line to any other point on its line, under existing franchises, and the effect thereon of general legislative enactments.

The Legislature has not fixed a rate of fare, specifically, to be charged on this road, nor has the Public Service Commission attempted to fix the rate in the exercise of the power to regulate rates delegated to it by the Legislature. The inquiry was directed to an alleged non-compliance with provisions of law into which the Commission is empowered to examine and make an order that the corporation satisfy the cause of the complaint. (Pub. Serv. Comm. Law, § 45, subd. 2; Id. § 48.) We are not called upon to consider either the power of the Legislature or of the Public Service Commission to prescribe another or different rate. The question is simply, is the rate now charged a violation of law? It is not contended that it was not competent for the city of Brooklyn in 1853 to annex to its grant a condition that the rate of fare on this line to the city line should be five cents. Nor is it contended that the town of Flatbush in 1860 did not have the right to prescribe that the company should not charge more than five cents each way on that part of their line lying in the town of Flatbush. A right to charge not to exceed a maximum is authority to charge the maximum. There was nothing to affect the right to the two fares until the consent of the town of Flatbush to extend the line to the boundary of Flatbush in 1890. This consent was conditioned upon compliance by the company with the Street Railroad Act (Laws of 1884, chap. 252). Section 13 limits the right of any company incorporated under, or constructing and operating a railroad under, that act

to charge, and provides that it shall not charge, more than five cents for one continuous ride from any point to any other point within the limits of any incorporated city or village. It further provides that this section shall not apply to any part of any road heretofore constructed and now in operation, unless such company shall acquire the right to extend such road, in which event its rate of fare shall not exceed its authorized rates prior to such extension.

Likewise the acts of 1890 and 1892 (Railroad Law of 1890, § 101, as amd. by Laws of 1892, chap. 676) excepted any part of any road constructed prior to May 6, 1884, and then in operation, unless an extension thereof should be acquired under the provisions of the act of 1884 or under the provisions of the acts of 1890 and 1892, in which event the rate of fare should not exceed its authorized rate prior to such extension. A similar exception is contained in the amendment of 1897 (Laws of 1897, chap. 688) and in the existing law (Railroad Law [Laws of 1910, chap. 481], § 181). There was, therefore nothing in the statutes which would affect the right of the Brooklyn City Railroad Company to charge the same fares after, as before, the extension in 1890 and 1892. The subsequent annexation of Flatbush and Flatlands to the city of Brooklyn did not alter the franchise rights, nor did the consolidation of Brooklyn with the city of New York impose upon the Brooklyn City Railroad Company any obligation or requirement from which it was then free. (*Braffett* v. *Brooklyn, Q. C. & S. R. R. Co.*, 204 N. Y. 440, 447; *Hogan* v. *Long Island R. R. Co.*, 206 id. 440, 446.)

In October, 1913, the Brooklyn City Railroad Company obtained from the city of New York consent to extend its line on Roebling street and in April, 1916, a like consent to extend its line on Fresh Pond road. In these consents was a provision that " the rate of fare for any passenger upon said railway shall not exceed five (5) cents, and the company shall not charge any passenger more than five (5) cents for one continuous ride from any point on its road or on any road, line or branch operated by it or under its control, to any other point thereof, or any connecting branch thereof within the limits of the City, unless a rate of fare in excess of five (5) cents may be lawfully charged therefor."

The learned counsel for the city and the Public Service Commission contend that these extensions of remote and wholly disconnected lines, by reason of the provisions of the Railroad Law and the language above quoted from the city's consent, deprived the railroad company of any right that theretofore existed to charge more than a five-cent fare on its Flatbush avenue line. They ignore the last sentence of the consent " unless a rate of fare in excess of five (5) cents may be lawfully charged therefor " and also of the Railroad Law which provides that the limitation of fares to five cents shall " not apply to any part of any road constructed prior to May 6, 1884, and then in operation, unless the corporation owning the same shall have acquired the right to extend such road, or to construct branches thereof * * *, *in which event its rate of fare shall not exceed its authorized rate prior to such extension.*"

Thus it clearly appears that the extension of a road was neither to affect the rate theretofore authorized nor to give the right because of such extension to exact any increase of fare. Existing legal rates are safeguarded. Therefore, in my opinion, these extensions have no effect upon the right of the railroad company to charge the additional fare over that portion of its line which extended beyond the limits of the city of Brooklyn as it existed in 1860.

It is further contended that the Flatbush avenue line having been leased to the Brooklyn Heights Railroad Company and that company having reduced the fare to a single five-cent fare on the entire line, the Brooklyn City Railroad Company on the termination of the lease could not exact a greater fare without the consent of the Public Service Commission first obtained. The Brooklyn Heights Company while operating this line was required to give free transfers from the various lines owned or operated by it to points on any other line owned or operated by it. It voluntarily fixed a five-cent fare on this line. These provisions were binding upon it so long as it controlled and operated the line. When, however, the lease terminated, and the owner resumed possession it took the property with all the rights and subject only to the limitation originally imposed by its franchise which could in no way be limited by any act or obligation of the tenant. The tenant could not waive or impair any right of the landlord.

Therefore, we hold that the Brooklyn City Railroad Company in charging a second fare on that portion of the Flatbush avenue line beyond the limits of the city line of Brooklyn as it existed in 1860 is within its legal rights.

The order of the Public Service Commission will be reversed, with fifty dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Writ sustained and order reversed, with fifty dollars costs and disbursements.